# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

IVAX CORP. and POLYVEL, INC.,

      Plaintiffs,

v.

AZTEC PEROXIDES, L.L.C., LAPORTE
PLC, DEGUSSA AG, ATOFINA
CHEMICALS, INC., ELF ATOCHEM S.A.,
ATOFINA S.A., and TOTAL FINA ELF
S.A.,

      Defendants.

Case No. 1:02CV00593 (JR)

## DEGUSSA AG'S REPLY MEMORANDUM IN SUPPORT OF
## DEGUSSA AG'S MOTION TO DISMISS AND IN OPPOSITION TO
## PLAINTIFFS' MOTION TO COMPEL JURISDICTIONAL DISCOVERY

On July 19, 2002, Degussa AG ("Degussa") respectfully moved that this Court dismiss

Degussa from the instant action for lack of personal jurisdiction, or alternatively, for failure to

state a claim upon which relief may be granted. On September 9, 2002, Plaintiffs served an

opposition to Degussa's motion to dismiss and a motion to compel jurisdictional discovery. *See*

Plaintiffs' Memorandum in Opposition to Motion to Dismiss of Defendant Degussa AG and in

Support of Cross-Motion to Compel Jurisdictional Discovery from Degussa AG ("Pls.' Mem.").[1]

This reply memorandum responds both to Plaintiffs' opposition to Degussa's motion to dismiss

and to Plaintiffs' motion to compel jurisdictional discovery.

---

[1]     During the conference call with the parties on September 4, 2002, the Court suggested that a request for jurisdictional discovery should be made in the context of Plaintiffs' response to the motions to dismiss. Nevertheless, Plaintiffs have filed a motion to compel, apparently in an effort to get an opportunity to file reply papers on these issues. Degussa respectfully suggests that any request by Plaintiffs to file additional papers should be denied, as no additional papers were contemplated by the scheduling order entered by the Court or by the parties' conference call with the Court.

Plaintiffs' Memorandum all but concedes that there is no basis for having named Degussa as a defendant in this action. None of Plaintiffs' allegations—neither the vague allegations in the Complaint nor the speculative or irrelevant allegations in Plaintiffs' Memorandum—amounts to a *prima facie* showing of pertinent jurisdictional facts or an adequate basis for jurisdictional discovery. A telling measure of Plaintiffs' inability to muster a single colorable jurisdictional allegation against Degussa is Plaintiffs' resort to Degussa's stipulation to personal jurisdiction in the *Vitamins* litigation—a stipulation wherein Plaintiffs' counsel (Cohen Milstein) agreed, under order of this Court, that Degussa's agreement not to challenge jurisdiction in that case "*shall be without prejudice to, and shall not constitute a waiver of, any rights or defenses, including but not limited to [Degussa's] rights . . . to oppose personal jurisdiction in the D.C. Court in any action other than the [Vitamins] Actions*." Affidavit of Joseph M. Barton Ex. 22 ¶ 8.

Even more revealing is Plaintiffs' response to Degussa's Rule 12(b)(6) motion. Plaintiffs concede that the Complaint's only allegation against Degussa is that "in 2001, Degussa purchased Laporte." Compl. ¶ 11. Nothing in those five words describes or even remotely implies unlawful conduct by Degussa. Thus, Plaintiffs are left making the remarkable argument that "[t]he discovery requests addressed in this motion would provide the information needed to respond fully and fairly to Degussa's assertions." (Pls' Mem. at 12.) Yet Plaintiffs have turned the standard for dismissal under Rule 12(b)(6) on its head. There is no authority for allowing a plaintiff to take discovery in order to adequately plead a claim for relief. Instead, the law requires dismissal where, as here, "*on the strength of the Complaint*" the plaintiff fails to state a claim upon which relief can be granted. *In re Vitamins Antitrust Litig.*, Misc. No. 99-197 (TFH), MDL. No. 1285, 2001 U.S. Dist. LEXIS 9585, at *20 (D.D.C. Apr. 11, 2001) (Pls.' Mem. Ex. D) (emphasis added).

Accordingly, under Rule 12(b)(2) or Rule 12(b)(6), or both, this Court should **DENY** Plaintiffs' motion to compel jurisdictional discovery and **GRANT** Degussa's motion to dismiss.

## I.    THE COMPLAINT FAILS TO ALLEGE ANY BASIS FOR PERSONAL JURISDICTION OVER DEGUSSA, AND PLAINTIFFS' MEMORANDUM STATES NO COLORABLE BASIS FOR JURISDICTIONAL DISCOVERY.

As the Supreme Court has made clear, personal jurisdiction over a defendant may be exercised in one of two forms. "[W]hen a [local court] exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the [court] is exercising 'specific jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). "When a [local court] exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the [court] has been said to be exercising 'general jurisdiction' over the defendant." *Id.* at 414 n.9. Because the instant suit does not "arise out of or relate to" any alleged contact Degussa has had with the District of Columbia, Plaintiffs concede (as they must) that no basis for specific jurisdiction over Degussa exists. Plaintiffs contend only that "Degussa is Subject to the Court's General Jurisdiction." (Pls.' Mem. at 5.)

District of Columbia law permits courts to exercise general jurisdiction over a foreign corporation "doing business in the District." D.C. Code § 13-334(a). However, "[u]nder the Due Process Clause, such general jurisdiction over a foreign corporation is only permissible if the defendant's business contacts with the forum district are 'continuous and systematic.'" *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509-10 (D.C. Cir. 2002) (quoting *Helicopteros*, 466 U.S. at 415); *see El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 675 (D.C. Cir. 1996) ("doing business" under D.C. Code § 13-334(a) requires a " 'continuing corporate

presence . . . directed at advancing the corporation's objectives' ") (quoting *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C. 1981) (per curiam)).[2] " 'Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test' than for specific jurisdiction." *Id.* at 510 n.2 (quoting *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).  In other words,

> although "[s]pecific jurisdiction . . . may be asserted when the defendant's forum contacts are isolated or sporadic, but the plaintiff's cause of action arises out of those contacts with the state," when "the cause of action sued on does not arise from the defendant's contacts with the forum state, an assertion of general jurisdiction must be predicated on contacts that are *sufficiently continuous and systematic* to justify haling the defendant into a court in that state."

*Id.* (quoting 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.5, at 499-507 (3d ed. 2002) (emphasis added)).  "[W]here, as here, a claim does not arise from a non-resident's contacts with the forum state, due process requires a particularly searching scrutiny of alleged jurisdictional contacts." *Bayles v. K-Mart Corp.*, 636 F. Supp. 852, 855 (D.D.C. 1986).

By seeking jurisdictional discovery, Plaintiffs all but concede that the allegations in the Complaint are insufficient to establish personal jurisdiction over Degussa.[3]  "[I]n order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad.*

---

[2]    As explained below, Plaintiffs' reliance on D.C. Code § 13-334(a) is unavailing because Plaintiffs have not alleged any specific facts suggesting that Degussa is or has been "doing business in the District" within the meaning of § 13-334(a) or consistent with the Due Process Clause.  Plaintiffs' reliance on § 13-334(a) is also unavailing for the additional reason that Plaintiffs failed to serve Degussa within the District, as § 13-334(a) requires.

[3]    What Plaintiffs characterize as the Complaint's "jurisdictional allegations concerning Degussa" (Pls.' Mem. at 8) clearly do not amount to " '*specific acts* connecting [Degussa] with the forum.' " *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  Paragraphs 11 and 12 of the Complaint, on which Plaintiffs rely (Pls.' Mem. at 8), do not allege any contacts between Degussa and the District of Columbia.  They merely say that Degussa is a German corporation that purchased Laporte, a British corporation, in 2001.  *See* Compl. ¶¶ 11-12.  Paragraph 6 of the Complaint, on which Plaintiffs also rely (Pls.' Mem. at 8), simply contains vague, boilerplate language that alleges no specific contacts between Degussa (or any other defendant) and the District of Columbia.

*Sys. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).  Here, this means that

Plaintiffs must " 'show a colorable basis,' " *id.* at 1090 (citation omitted), for believing that

jurisdictional discovery will demonstrate not merely " 'isolated or sporadic' " contacts between

Degussa and the District of Columbia, but rather " 'sufficiently continuous and systematic

[contacts] to justify" the exercise of general jurisdiction over Degussa, *Gorman*, 293 F.3d at 510

n.2 (citation omitted).  To meet this standard, Plaintiffs advance three arguments, none of them

persuasive.

> *First*, and "[m]ost importantly" in Plaintiffs' view, Plaintiffs observe that "Degussa itself

has agreed to not challenge personal jurisdiction and try the *Vitamins* [litigation] before Chief

Judge Hogan of this Court."  (Pls.' Mem. at 6.)  Contrary to Plaintiffs' assertions, however,

nothing precludes a company from contesting personal jurisdiction in one case after not

contesting personal jurisdiction in another case in the same forum.  As the Supreme Court has

explained:

> Personal jurisdiction . . . "represents a restriction on judicial power . . . *as a*
> *matter of individual liberty*."  Therefore, a party may insist that the limitation be
> observed, or he may forgo that right, effectively consenting to the court's exercise
> of adjudicatory authority.  *See* Fed. R. Civ. P. 12(h)(1) (defense of lack of
> jurisdiction over the person waivable) . . . .

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (emphasis added) (citation omitted).

Because personal jurisdiction is "a matter of individual liberty," *id.*, Degussa (absent a court

order establishing jurisdiction) is free to shape the contours of its liberty from adjudicatory

authority as it sees fit under the circumstances of a given case.  The fact that Degussa determined

that its interests would best be served by stipulating to personal jurisdiction in the *Vitamins* case

does not mean it is bound to reach the same determination in this or any other case brought in the

District of Columbia.  Nothing in law or logic supports such a result.  To the contrary, the rule

Plaintiffs propose would spawn wasteful litigation by forcing defendants to contest personal jurisdiction in each and every case where it is in question for fear of being held to have consented to jurisdiction in the particular forum forevermore.

Throughout their Memorandum, Plaintiffs repeatedly mention Degussa's stipulation to personal jurisdiction in *Vitamins* (*see* Pls.' Mem. at 3, 6, 7 & n.7, 10) in support of their argument that "[s]ince Degussa agreed to try the *Vitamins* case in this Court after providing Court-ordered discovery concerning its contacts with the District, Degussa cannot hope to now show in this case that subjecting it to jurisdictional discovery, merits discovery, or suit in this District will 'offend traditional notions of fair play and substantial justice' " (*id.* at 7 (citation omitted)). But Degussa and other foreign defendants withdrew their motions to dismiss for lack of personal jurisdiction in the *Vitamins* case not because they lacked merit, but because the plaintiffs in *Vitamins* provided valuable consideration (*i.e.*, an agreement to litigate in the District of Columbia a host of related cases originally filed in multiple venues across the country) in exchange for the foreign defendants' consent to personal jurisdiction in this Court. Indeed, the stipulation makes clear that Degussa's consent to jurisdiction in *Vitamins* does not constitute an admission of any jurisdictional contacts with the District:

> 10.    Except as expressly provided in this Stipulation, Stipulating Defendants'
> agreements herein shall in no way be construed as an admission of any of the
> allegations or contentions of the pleadings, they shall not constitute nor be
> deemed an admission of jurisdiction or of relevant jurisdictional facts or
> jurisdictional contacts in any jurisdiction, and they do not represent an agreement
> or recognition that any court has general or specific jurisdiction to hear claims of
> a general or related nature to the allegations in the [*Vitamins*] Actions.

Barton Aff. Ex. 22 ¶ 10.

Moreover, Plaintiffs' attempt to use Degussa's stipulation in *Vitamins* to undermine Degussa's opposition to personal jurisdiction in this action violates the express terms of that

stipulation. The stipulation—signed not only by counsel for Degussa but also by Plaintiffs'

counsel (Cohen Milstein) and approved by the District Court—provides:

> 7.    Stipulating Defendants do not consent to the personal jurisdiction of the
> D.C. Court except as relates to the [*Vitamins*] Actions, and nothing in this
> Stipulation is intended to constitute or effect a waiver or serve as an estoppel of
> their jurisdictional arguments in any other action.
>
> 8.    Except as expressly provided in this Stipulation, Stipulating Defendants'
> agreements set forth herein shall be without prejudice to, and shall not constitute a
> waiver of, any rights or defenses, including but not limited to Stipulating
> Defendants' rights (a) to oppose personal jurisdiction in any action in any court
> other than the D.C. Court; (b) to oppose personal jurisdiction in the D.C. Court in
> any action other than the [*Vitamins*] Actions; (c) to oppose jurisdiction in any
> Action if Stipulating Defendants invoke paragraph 15 of this stipulation and
> Stipulating Plaintiffs fail to comply with that paragraph; (d) to challenge the
> sufficiency of service of process in any action; (e) to oppose jurisdiction or venue
> with respect to any claim not asserted, or any claim by any plaintiff not named, in
> the Actions as of the date hereof; (f) to oppose the amendment of the complaint in
> any Action on any ground; and (g) to maintain that any discovery in any action,
> including merits discovery, must be obtained pursuant to the Hague Convention
> or Other Laws. . . .

*Id.* ¶¶ 7-8.

By repeatedly citing the stipulation in *Vitamins* to rebut Degussa's jurisdictional

arguments here, Plaintiffs have reneged on their agreement, made with the blessing of this Court,

that the stipulation "***shall be without prejudice to, and shall not constitute a waiver of, any***

***rights or defenses, including but not limited to Stipulating Defendants' rights . . . to oppose***

***personal jurisdiction in the D.C. Court in any action other than the [Vitamins] Actions.*" *Id.*

¶ 8 (emphasis added). Degussa respectfully suggests that such plain disregard for a judicially

approved agreement, negotiated for fair consideration by the parties and designed to expedite

litigation, should not be tolerated by this Court.[4]

---

[4]    *Cf. Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 882-83 (1994) (suggesting that Rule 11
sanctions are appropriate where a party to a settlement attempts "to renege on a promise because it now thinks it
should have negotiated a better deal"); *AFM Corp. v. Therma Panel Homes Corp.*, No. 00-CV-0055E(SC), 2001

*Second*, Plaintiffs offer six bullet points in support of their assertion that "Degussa has availed itself of special benefits and privileges in Washington, D.C. by having a variety of contacts in this District to perform a variety of business-related activities." (Pls.' Mem. at 5-6.) Even if accepted at face value,[5] the bullets are not suggestive of "continuous and systematic" contacts with the District of Columbia. The first, third, and sixth bullets do nothing more than speculate as to possible contacts between Degussa and the District of Columbia:

(*Bullet 1*)  The U.S. Patent and Trademark Office is located in Arlington, Virginia, not Washington, D.C., and Plaintiffs offer no basis for their hunch that Degussa "has retained lawyers and other professionals in Washington, D.C."—as opposed to any of the thousands of patent lawyers and other professionals in countless others cities throughout the world—"to handle its patent application and enforcement interests" (*id.* at 5).[6]

(*Bullet 3*)  The Department of Defense is also located in Arlington, Virginia, and the mere existence of defense contracts exceeding $25,000—a minuscule sum by defense industry standards—hardly "suggest[s] that Degussa has *significant* business dealings in Washington, D.C." (*id.* (emphasis added)).

(*Bullet 6*)  Likewise, it is mere speculation that "Degussa had dealings with attorneys and/or experts in Washington, D.C." (*id.* at 6) in connection with its attempted 1998 deal with du Pont. As the D.C. Circuit has recognized, " 'mere speculation' " does not entitle Plaintiffs to jurisdictional discovery. *Caribbean Broadcasting*, 148 F.3d at 1090 (citation omitted).

---

WL 118568 (S.D.N.Y. 2001) (ordering *sua sponte* a party to show cause why it should not be sanctioned and held in contempt of court where the party failed to adhere to terms of settlement agreement).

[5]      Although Plaintiffs suggest that the motion to dismiss for lack of personal jurisdiction should be treated as a motion for summary judgment under Rule 56(f), the allegations in Plaintiffs' Memorandum, even if undisputed, hardly suggest the existence of "facts essential to justify [Plaintiffs'] opposition." Fed. R. Civ. P. 56(f). Instead, as explained below, Plaintiffs' allegations confirm that there is no colorable basis to believe that Degussa maintains a " 'continuing corporate presence [in the District] directed at advancing the corporation's objectives.' " *El-Fadl*, 75 F.3d at 675 (citation omitted).

[6]      Exhibit 17 to the Affidavit of Joseph M. Barton (cited in Pls.' Mem. at 5) contains a report from the U.S. Patent and Trademark Office's Technology Assessment and Forecast ("TAF") Branch, which is located in the District of Columbia. But the function of the TAF Branch is "to stimulate the use and enhance the usability of the patent file, and to assemble, analyze and make available meaningful data about the file." *See* www.uspto.gov/web/offices/ac/ido/oeip/taf/brochure.htm#background. The TAF Branch does not issue patents, does not evaluate patent applications, and does not handle enforcement. Plaintiffs allege no contacts between Degussa and the TAF Branch.

Plaintiffs' second, fourth, and fifth bullets identify three instances over a twelve-year period (1990 to 2002) where Degussa has retained an attorney in Washington, D.C. to handle a specific litigation or administrative matter.  While such " 'isolated or sporadic' " contacts may be sufficient to support *specific* jurisdiction where the suit arises out of or relates to the specific contact, they are plainly insufficient to support *general* jurisdiction where, as here, the suit does not arise out of or relate to any specific contact.  *Gorman*, 293 F.3d at 510 n.2 (citation omitted).  Thus, the only authority cited by Plaintiffs in support of their *general* jurisdiction argument— *Koteen v. Bermuda Cablevision Ltd.*, 913 F.2d 973 (D.D.C. 1990)—is a case finding *specific* jurisdiction over a foreign company where a D.C. law firm had sued the company to collect unpaid fees.  In footnote 5 of their Memorandum, Plaintiffs expressly concede *Koteen*'s inapplicability to this case.  (*See* Pls.' Mem. at 6 n.5.)

To be sure, specific jurisdiction over a foreign defendant *in a fee dispute* may be based on the representation *giving rise to the fee dispute*.  But neither *Koteen* nor any other case cited by Plaintiffs (nor any case of which we are aware) holds that an attorney-client relationship can support general jurisdiction over a foreign client in a case totally unrelated to that relationship. *Cf. Sawtelle v. Farrell*, 70 F.3d 1381, 1392 (1st Cir. 1995) ("The mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required.").  Were Plaintiffs' argument correct, then Degussa's retention of D.C. counsel to defend it in this action before this Court would itself count as a relevant contact for establishing personal jurisdiction. Yet it would be unfair to Degussa, not to mention counterproductive for the Court, to construe the law of personal jurisdiction to penalize a foreign defendant for retaining counsel familiar with the rules and practice of the local jurisdiction.

In sum, there is no colorable basis for believing that discovery would demonstrate "[s]ystematic unrelated activity, such as domicile, incorporation, or doing business, suggest[ing] that [Degussa] is enough of an 'insider' . . . [in] the [District's] political processes" to warrant general jurisdiction. *Fisher v. Bander*, 519 A.2d 162, 164 n.1 (D.C. 1986) (citation and emphasis omitted). Degussa simply does not have a "continuing corporate presence" in the District of Columbia, *El-Fadl*, 75 F.3d at 675, and Plaintiffs' allegations of irrelevant, speculative, isolated, or sporadic contacts come nowhere close to justifying jurisdictional discovery on a theory of general jurisdiction.[7]

*Third*, Plaintiffs baldly assert that "[j]urisdictional contacts of Degussa's subsidiaries may also be attributed to Degussa." (Pls.' Mem. at 8.) But neither the Complaint nor Plaintiffs' Memorandum alleges *any* jurisdictional contacts between Degussa's subsidiaries and the District of Columbia. Plaintiffs' failure even to identify any contacts that could be attributed to Degussa—let alone contacts suggestive of continuous and systematic activities by Degussa subsidiaries in the District of Columbia—should be the end of the matter.

Even if Plaintiffs had alleged contacts between Degussa's subsidiaries and the District, Plaintiffs' highly general allegations that Degussa holds itself out as a multinational corporation and works with its subsidiaries through an integrated business strategy (*see id.* at 8-9) do not even begin to suggest that Degussa "dominates," "controls," or "manage[s]" its subsidiaries (*id.* at 9). In *Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998), the plaintiffs sought to

---

[7]     The weak contacts alleged by Plaintiffs stand in contrast to the substantial contacts in cases where this Court has exercised general jurisdiction over a foreign defendant. *See, e.g., Ross v. Prod. Dev. Corp.*, 736 F. Supp. 285, 290 (D.D.C. 1989) (finding general jurisdiction where foreign defendant "has been authorized for more than four years to operate in the District," "maintains a registered agent in the District," and "conducts business in the District on a regular and ongoing basis twenty-one out of fifty-two weeks each year, year after year"); *Raymond v. Anthony Co.*, 233 F. Supp. 305, 305-06 (D.D.C. 1964) (finding general jurisdiction where foreign defendant "maintain[s] an office" in the District and "has one full-time employee in the District" who services existing contracts and solicits new ones in the District).

attribute a subsidiary's local contacts to its foreign parent by relying on statements made by the foreign parent's president that the company " 'need[s] to become a truly global company' " and that " 'I want each part of our global operations . . . to focus on contributing to the company as a whole.' " *Id.* at 185. Denying jurisdictional discovery, the Second Circuit found "[n]one of this material, and especially not a request for world-wide cooperation" to be probative of the parent's "pervasive control over the subsidiary." *Id.*

Moreover, none of Plaintiffs' allegations based on Degussa's website (*see id.*) remotely suggests that Degussa "dominates and controls the operations of its subsidiaries around the world" (*id.*), or otherwise disregards the separate corporate existence of its subsidiaries. If anything, those allegations indicate nothing more than that Degussa is affiliated with business units and production sites throughout the world. As the Seventh Circuit has made clear, "personal jurisdiction cannot be premised on corporate affiliation . . . alone" where there is no allegation that "corporate formalities are [not] substantially observed" or that the parent "exercise[s] an unusually high degree of control over the subsidiary." *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (denying jurisdictional discovery).

Were Plaintiffs' speculative and vague allegations sufficient to attribute the contacts of a subsidiary to its parent or to justify jurisdictional discovery on such a theory, then

> it would not be difficult for a plaintiff suing a multinational foreign corporation in the federal court[] in [the District of Columbia] to make similar conclusory non-fact-specific jurisdictional allegations and thus obtain extensive discovery on that issue. This would require the federal courts to conduct substantial jurisdictional discovery over foreign corporations—a practice in which they have not hitherto engaged.

11

*Jazini*, 148 F.3d at 185-86. In short, "a parent-subsidiary relationship alone is insufficient" "to attribute the subsidiary's contacts with the District of Columbia to the parent corporation." *El-Fadl*, 75 F.3d at 675.

*    *    *    *

In sum, the allegations in Plaintiffs' Memorandum fail to remedy the jurisdictional deficiencies in the Complaint. Plaintiffs' papers confirm that there is no basis for believing that Degussa has "the kind of systematic and continuous general business contacts" with the District necessary for general jurisdiction, *Helicopteros*, 466 U.S. at 416, or that Degussa's subsidiaries have such contacts with the District and that those contacts may properly be attributed to Degussa. Plaintiffs' motion to compel jurisdictional discovery should be denied, and this Court should dismiss Degussa for lack of personal jurisdiction.

## II.    THE COMPLAINT FAILS TO STATE ANY VALID LEGAL CLAIM AGAINST DEGUSSA.

Plaintiffs' Complaint should be dismissed even if this Court were to conclude—or to assume without deciding—that it has personal jurisdiction over Degussa. The reason is that the Complaint states no claim against Degussa, and Plaintiffs' Memorandum confirms this is so. All but conceding that there is no basis for naming Degussa in this suit, Plaintiffs ask for discovery in an effort to find something that might help them avoid dismissal for failure to state a claim. *Compare* Pls.' Mem. at 12 ("The discovery requests addressed in this motion would provide the information needed for Plaintiffs to respond fully and fairly to Degussa's [motion to dismiss].") *with Wood v. Dep't of Labor*, 275 F.3d 107, 108 n.2 (D.C. Cir. 2001) ("On a motion to dismiss,

the facts *as alleged in the complaint* are taken as true and all reasonable inferences *therefrom* are drawn in the plaintiff's favor.") (emphasis added).[8] Such an extraordinary request underscores the infirmity of Plaintiffs' Complaint.

Beyond asking for discovery, Plaintiffs assert that the Complaint states a valid claim against Degussa "as a successor for the acts of Laporte and Aztec, companies it acquired." (Pls.' Mem. at 12.) Plaintiffs say they "are entitled to an inference that Degussa's purchase amounts to a 'consolidation' or merger, or that there was an agreement (whether express or implied) to transfer liability." *Id.* But the Complaint's sole allegation against Degussa—"in 2001, Degussa purchased Laporte," Compl. ¶ 11—cannot support such an inference. *See Maljack Prods., Inc. v. Motion Pictures Ass'n of Am.*, 52 F.3d 373, 375 (D.C. Cir. 1995) ("we are not to accept inferences . . . if they are unsupported by the alleged facts, nor will we accept purely legal conclusions masquerading as factual allegations").[9] When this single allegation is read in light of "the general rule . . . that a purchasing corporation may not liable [sic] for the debts and liabilities of the acquired company" (Pls.' Mem. at 12), the fact that Plaintiffs have sued Laporte separately, *see* Compl. ¶ 10, and the Complaint's acknowledgment that Laporte continues to exist and operate as a distinct corporate entity, *see id.*, the only reasonable inference is that Laporte was *not* merged into Degussa and did *not* transfer liability for its alleged past actions to Degussa.

---

[8]    Plaintiffs subtly misstate the standard for dismissal when they assert that "[i]n order to prevail on its alternative Rule 12(b)(6) motion, Degussa must show that Plaintiffs can prove no set of facts entitling Plaintiffs to relief against it." Pls.' Mem. at 13. Contrary to what Plaintiffs suggest by their request for discovery on a motion to dismiss, Degussa's burden is not to show that Plaintiffs can prove no set of facts *in the universe* entitling them to relief, only that Plaintiffs can prove no set of facts *alleged in the Complaint* entitling them to relief. *See Wood*, 275 F.3d at 108 n.2.

[9]    *See also Cogar v. Schuyler*, 464 F.2d 747, 750 (D.C. Cir. 1972) ("conclusions of law and other broad conclusionary allegations unwarranted or negated by the facts pleaded may be disregarded"); *Vitamins*, 2001 U.S. Dist. LEXIS 9585, at **19-20 (" 'neither legal conclusions nor unwarranted factual inferences constitute material allegations, and the Court is not obliged to accept such statements as true' ") (Pls.' Mem. Ex. D).

Finally, Plaintiffs' Memorandum attempts to supplement the allegations in the Complaint with new allegations that " 'Laporte activities were integrated into [various Degussa] business units' " (Pls.' Mem. at 13 (citing Affidavit of Mary N. Strimel Ex. 9)), and that "Degussa and Aztec Peroxides often hold themselves out to the public as one and the same company" (*id.*). But such allegations do not remotely suggest that Degussa "agreed to assume [Laporte's] liabilities," that Degussa did not pay "sufficient consideration for [Laporte's] assets," or that Laporte "effectively ceased to exist as an active corporation." *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F. Supp. 2d 13, 23 (D.D.C. 1999) (discussing factors relevant to establishing successor liability). Furthermore, even if Plaintiffs' unilluminating allegations were somehow probative of the terms of Degussa's purchase of Laporte (which they are not), they are nowhere stated in the Complaint, nor can they be reasonably inferred from the allegations in the Complaint. Accordingly, they do not help Plaintiffs meet their burden of showing that "the facts *as alleged in the complaint*" and "all reasonable inferences *therefrom*" state a valid legal claim against Degussa. *Wood*, 275 F.3d at 108 n.2 (emphasis added).

## CONCLUSION

For the foregoing reasons, Degussa respectfully requests that the Court dismiss Degussa

from this case for lack of personal jurisdiction or, alternatively, for failure to state a claim upon

which relief may be granted.

DATED:  September 20, 2002                    Respectfully submitted,


_William J. Stuckwisch_____
Richard G. Parker
William J. Stuckwisch
Goodwin Liu
O'MELVENY & MYERS LLP
555 Thirteenth Street NW
Washington, D.C.  20004
(202) 383-5300
*Attorneys for Degussa AG*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Degussa AG's Reply Memorandum in

Support of Degussa AG's Motion to Dismiss and in Opposition to Plaintiffs' Motion to Compel

Jurisdictional Discovery was served on the following:


**VIA ELECTRONIC CASE FILING:**

Ann C. Yahner
Mary N. Strimel
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue NW
West Tower, Suite 500
Washington, D.C.  20005


**VIA FIRST-CLASS U.S. MAIL:**

Linda P. Nussbaum
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
825 Third Avenue, 30th Floor
New York, New York  10022

Steven O. Sidener
Gold Bennett Cera & Sidener L.L.P.
595 Market Street, Suite 2300
San Francisco, California  94105

Anthony J. Bolognese
Bolognese & Associates L.L.C.
One Penn Center, Suite 650
1617 JFK Boulevard
Phildelphia, Pennsylvania  19103

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, Pennsylvania  18901

Robert N. Kaplan
Kaplan, Fox & Kilsheimer L.L.P.
805 Third Avenue, 22nd Floor
New York, New York  11220

Joseph Milano
Schwartz Levin & Milano
275 Madison Avenue
New York, New York  10016-1101

Michael E. Criden
Hanzman Criden Chaykin & Rolnick P.A.
Commercebank Building
2200 Alhambra Circle, Suite 400
Coral Gables, Florida 33134

Jay B. Shapiro
Stearns Weaver Miller Weissler Alhadeef &
Sitterson
Museum Tower, Suite 220
150 West Flagler Street
Miami, Florida  33130

Eugene A. Spector
Spector, Roseman & Kodroff
1818 Market Street, Suite 2500
Philadelphia, Pennsylvania  19103

H. Laddie Montague, Jr.
Ruthanne Gordon
David A. Langer
Berger & Montague P.C.
1622 Locust Street
Philadelphia, Pennsylvania  19103

Margaret M. Zwisler
Elizabeth B. McCallum
Eric J. McCarthy
Howrey Simon Arnold & White L.L.P.
1299 Pennsylvania Avenue NW
Washington, D.C. 20004

Steven A. Kanner
Much Shelist Freed Denenberg Ament &
Rubenstein P.C.
200 N. LaSalle Street, Suite 2100
Chicago, Illinois  60601-1095

Karen P. Flynn
Atofina Chemicals, Inc.
2000 Market Street
Philadelphia, Pennsylvania 19103-3222
(215) 419-7061

Dated: September 20, 2002

William J. Stuckwisch
*Attorney for Degussa AG*

17